**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Green Valley Villas West Condominium Association, | No. CV-23-00320-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| Washington Federal Bank, et al., | |
| Defendants. | |

Pending before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss Count One pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 6) and Defendant Washington Federal Bank's ("WaFd") Motion to Dismiss Count One pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 16). The matters have been fully briefed. (Docs. 6, 13, 16, 21, 23–24.) Per the parties' request, the Court held oral argument on April 16, 2024.

**I.      Factual Allegations**

This case was removed from state court based on diversity jurisdiction. (Doc. 1.) Plaintiff Green Valley Villas West Condominium Association ("Villas West") filed suit against WaFd and Wells Fargo. (Doc. 1-3 at 5–9.) In 2020, Villas West hired Jesus Sotelo to do administrative work; unbeknownst to Villas West, Sotelo devised two schemes to embezzle money from his employer. (*Id.* at 5–6.)

In the first scheme, Sotelo took invoices from vendors who did work for Villas West and forged new invoices for inflated amounts that he submitted to Villas West for

payment. (*Id.*) Villas West had two bank accounts with WaFd. (*Id.*) Once Villas West issued checks from one of these accounts to pay the inflated invoices, Sotelo deposited the checks into one of his personal bank accounts at Wells Fargo via ATM or the Wells Fargo mobile banking app. (*Id.*) Sotelo then sent payment directly from his account to the vendor for the originally invoiced amount. (*Id.*)

According to the Complaint, Sotelo deposited at least 53 inflated vendor checks from October 1, 2020 to September 8, 2021. (*Id.*) Most of those checks had no indorsement signature; on the others, Sotelo simply wrote the name of the vendor to indorse the check. (*Id.*) Sotelo allegedly stole $234,570.60 by depositing inflated vendor checks. (*Id.*)

In his second scheme, Sotelo deposited checks mailed and issued to Villas West into his personal accounts at Wells Fargo. (*Id.*) Sotelo again deposited the un-indorsed checks via ATM or mobile banking app. (*Id.*) Villas West alleges that Sotelo stole $86,965.38 by depositing checks issued to Villas West. (*Id.*)

Villas West alleges that neither WaFd nor Wells Fargo exercised ordinary care or followed internal policies for validating check indorsements, in particular for large checks. (*Id.* at 6–7.) For example, Sotelo deposited an inflated vendor check for $31,000 and a check issued to Villas West for $68,758.38. (*Id.*)

Count One—based on the vendor check scheme—is titled "Recredit Account" and alleges that both WaFd and Wells Fargo "failed to act in a commercially reasonable manner when they allowed Sotelo to deposit vendor checks into his account that were neither made out to him nor properly indorsed." (*Id.* at 7.) As a result, Plaintiffs allege WaFd and Wells Fargo "must recredit Plaintiffs' [sic] accounts . . . ." (*Id.*) Count Two—based on the second embezzlement scheme—is titled as a Uniform Commercial Code ("UCC") Conversion claim and alleges that Wells Fargo "failed to act in a commercially reasonable manner when it allowed Sotelo to deposit checks into his account that were clearly payable to Plaintiff and that were not properly indorsed." (*Id.* at 8.) Only Count One is at issue on the pending Motions to Dismiss.

## II.     Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim" and allows a party to seek dismissal for failure to state a claim because either the complaint lacks a cognizable legal theory or lacks the factual allegations to support such a theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is only plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The law requires the complaint to contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly,* 550 U.S. at 555. This means that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). A court may, however, consider documents not attached to the complaint without converting the motion to one for summary judgment if the "'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)).

## III.     Wells Fargo's Motion to Dismiss

Wells Fargo seeks to dismiss Count One pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6 at 1.) The Complaint does not specify what statute underpins Count One. (*See* Doc. 1.) Wells Fargo assumes that, because Count One seeks to "recredit" an account, it is governed by UCC §§ 3-420 and 4-401 (A.R.S. §§ 47-3420 and 47-4401)[1] and it argues that, under both provisions, the claim fails as a matter of law.

---

[1] The parties use citations to the UCC, but this Order will cite the equivalent provisions in the Arizona Revised Statutes

- 3 -

(Doc. 6 at 2.) First, Wells Fargo asserts that § 47-3420 "fails because the issuer of a check may not bring an action for its conversion" and Villas West issued the vendor checks alleged in Count One. (*Id.* at 6.) Second, Wells Fargo argues that § 47-4401 cannot support a plausible claim because "[o]nly the customer's own bank—i.e., the drawee or payor bank—may 'charge' its customer's account [and] [t]hus, the customer may only bring a claim to recredit account (to reverse the charge) against its own bank." (*Id.* at 7.) Because Wells Fargo was Sotelo's bank, Villas West can only bring a recredit account action against WaFd. (*Id.* at 7–8.)

However, in its Response, Villas West emphasizes that the Complaint cannot be dismissed simply because it failed to specify a particular legal theory. (Doc. 13 at 4.) Rather, Villas West seeks "reimbursement *under any applicable legal theory* of the funds that it lost because of Wells Fargo's failure to employ commercially-reasonable banking practices." (*Id.*) More specifically, Villas West clarifies that Count One is governed by A.R.S. §§ 47-3404 to 47-3406 and both these provisions hold a depository bank liable. (*Id.* at 1.)

Addressing these statutes for the first time in its Reply, Wells Fargo argues that § 47-3404 applies only in situations where there was an "imposter" or "fictitious payee" and neither is involved here. (Doc. 21 at 2.) It emphasizes that Villas West made the checks out to the correct vendors, and Sotelo was not impersonating the vendor nor inducing Villas West to write the check in his name. (*Id.*) Moreover, Wells Fargo asserts that any § 47-3404 claim would fail as to any checks that were not indorsed because that provision only applies to indorsed checks. (*Id.* at 3 n.2.)

Similarly, Wells Fargo argues that a claim under § 47-3405 fails because Villas West has not plausibly alleged that Wells Fargo failed to exercise ordinary care. (*Id.* at 4.) Specifically, "Plaintiff does not allege that Wells Fargo had a prescribed procedure to examine any of the checks at issue . . . ." (*Id.*) Wells Fargo avers that it does not have any such procedure, especially for checks as little as $31,000 and, even if it did, those checks

---

because that is the applicable authority. Arizona adopted the UCC. *See* Title 47, Arizona Revised Statutes.

were not indorsed and the statute only applies to indorsed checks. (*Id.* at 5.) Furthermore, Wells Fargo highlights that § 47-3103(A)(7) does not require a bank to examine checks deposited via automated means in order to exercise ordinary care. (*Id.*)

The remainder of the Reply focuses on Wells Fargo's argument that § 47-3406 does not provide an affirmative claim but is rather a contributory negligence provision applicable only where a defendant asserts that the issuer of a check also failed to exercise ordinary care. (*Id.* at 6–9.)

### A. Discussion

As a threshold matter, Villas West is correct that Count One cannot be dismissed because the Complaint failed to specify a legal theory. "A complaint does not need to specify the particular legal theory on which a claim is based 'so long as sufficient factual averments show that the claimant may be entitled to some relief.'" *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1058 (C.D. Cal. 2009) (quoting *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001)); *see also Braiser v. Union Pac. R.R.*, No. CV-21-00065-TUC-JGZ (MSA), 2023 WL 2754007, at *14 (D. Ariz. Mar. 31, 2023).

The Court also notes that Villas West does not clearly assert a stand-alone cause of action based on § 47-3406. Instead, it raises the provision in the context of explaining that §§ 47-3404, 47-3405, and 47-3406 create a negligence cause of action framework against depository banks and other courts have concluded as much when applying these provisions to embezzlement schemes similar to the ones at issue in this case. (Doc. 13 at 5–6.) Indeed, Villas West agreed at oral argument with Wells Fargo that § 47-3406 permits a bank to assert that the issuer of a check was contributorily negligent. The Court therefore finds it unnecessary to examine whether § 47-3406 is an offensive tool that provides a stand-alone cause of action because Villas West is not seeking to use it as such. Therefore, in this Order, the Court will only discuss whether Count One may proceed under §§ 47-3404 and 47-3405.

First, the Court finds that Villas West has plead a claim against Wells Fargo in Count One under § 47-3404. Assuming the facts alleged are true, Sotelo's vendor check

scheme was plausibly an imposter situation. An imposter situation occurs where "an imposter . . . induces the issuer of [the] instrument to issue the instrument to the imposter . . . by impersonating the payee of the instrument . . . ." A.R.S. § 47-3404(A). Subsection D establishes liability when an imposter deposits a check:

> [I]f a person paying the [imposter] instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, *the person bearing the loss may recover from the person failing to exercise ordinary care* to the extent the failure to exercise ordinary care contributed to the loss.

A.R.S. § 47-3404(D) (emphasis added).

Ordinary care is the "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." A.R.S. § 47-3103(A)(7). "In the case of a bank that takes an instrument for processing for collection or payment by *automated means*, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this chapter or chapter 4 of this title." *Id.* (emphasis added). However, the comments make clear that the customer is not precluded "from proving that the procedures followed by a bank are unreasonable, arbitrary, or unfair." A.R.S. § 47-3103 cmt. 4.

Although Villas West does not allege that Sotelo induced it to issue vendor checks in his name, Villas West does allege that Sotelo induced it to write inflated vendor checks with the sole purpose of depositing the money into his account thereby impersonating the payee. Furthermore, Villas West specifically alleges that Wells Fargo failed to exercise ordinary care because it "failed to follow any internal policies for validating check endorsements . . . ." (Doc. 1-3 at 7.)

The issues Wells Fargo raised in its briefings and at oral argument are factual questions suitable for summary judgment but not a motion to dismiss. These include

whether Wells Fargo has any policy of verifying checks deposited through automated means; whether that policy requires Wells Fargo to confirm that the checks are indorsed and payable to the account holder; whether Wells Fargo's actions in permitting Sotelo to deposit 53 checks made out to other payees violated any such policy; or whether Wells Fargo's procedures are otherwise unreasonable, arbitrary, or unfair.

The Court likewise finds that Villas West has plausibly alleged a claim in Count One based on § 47-3405. That provision covers situations where an employee "entrusted with responsibility with respect to the instrument . . . makes a fraudulent indorsement of the instrument," establishing that such indorsement "is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person." A.R.S. § 47-3405(B). Despite the employer's own liability, the employer may also recover from "the person paying the instrument or taking it for value or for collection [if the person] fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud." *Id.*

Again, for purposes of a motion to dismiss, Villas West's allegations establish that it hired Sotelo as an employee and entrusted him with responsibility regarding the invoices and the checks made payable to vendors. It also alleged that on some of those checks, Sotelo made fraudulent indorsements by writing the name of the vendor, and, on the rest, he simply fraudulently indorsed them by depositing the checks into his personal accounts.

The same factual questions that arise with regard to § 47-3404 arise with § 47-3405 and can be raised at summary judgment. Moreover, the issue of whether these statutes can apply to checks that were not indorsed through signature was presented for the first time in Wells Fargo's Reply and has not been fully briefed. The Court will not determine at this stage whether Wells Fargo or WaFd are entitled to a judgment in their favor as to the un-indorsed checks.

Because Villas West has plead a plausible claim in Count One, the Court will deny Wells Fargo's Motion to Dismiss.

///

**IV.    WaFd's Motion to Dismiss**

WaFd seeks to dismiss Count One pursuant to Rule 12(b)(6) because it argues that Villa West's claims are time-barred by both the Business Deposit Account Agreement between Villas West and WaFd ("the Agreement") and the UCC. (Doc. 16 at 1.)

The Agreement between WaFd and Villas West requires Villas West to notify WaFd about unauthorized transactions within 30 days after the account statement is made available. (*Id.*) By signing the Agreement, WaFd argues, "Villas West agreed not to assert any claim against WaFd Bank for unauthorized transactions not reported within this time frame." (*Id.*) Furthermore, the Agreement precludes actions based on repeated unauthorized transactions by a single individual if the first unauthorized transaction is not reported. (*Id.*) Because Villas West did not notify WaFd until two years after the checks were deposited, WaFd argues this claim should be dismissed. (*Id.*)

WaFd also argues that A.R.S. § 47-4406(F) requires that "a customer like Villas West suing its own bank on a claim stemming from a non-indorsed (or fraudulently indorsed) check(s) drawn against its account must 'discover and report' any such concerns to the bank within one year after the monthly account statement becomes available to the customer . . . ." (*Id.* at 1–2.) Villas West's claims therefore fail, according to WaFd, because this lawsuit was not filed until nearly two years after the embezzlement began. (*Id.* at 2.)

Villas West responds that, to the extent the Court is willing to consider the Agreement at this stage, it does not preclude Count One because Villas West could not have discovered the fraud by looking at the account statements. (Doc. 23 at 5.) Further, it argues that § 47-4406(F) is inapplicable because the statute only applies to checks with an unauthorized signature or alteration. (*Id.* at 4.) Villas West also cites to Comment 5 of the UCC § 4-406 (the provision that A.R.S. § 47-4406 adopted) which states that the UCC does not impose a duty on the customer to timely discover fraud based on a forged indorsement. (*Id.*)

///

///

### A. Discussion

As a threshold matter, the Court will not consider the Agreement at this stage. "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). A court may, however, consider documents not attached to the complaint without converting the motion to one for summary judgment if the "'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)).

The Agreement here is material beyond the pleadings and Villas West's Complaint does not necessarily rely on its account contract with WaFd. Neither did WaFd address how it argues that the Court should consider this document. Because the Court has not converted WaFd's Motion to Dismiss, the Agreement is not determinative at this stage. The factual questions regarding the meaning of the terms of the Agreement and whether Villas West's claims were discoverable within the meaning of these terms may be raised at summary judgment.

The Court also finds that Villas West's claim against WaFd is timely under the UCC (A.R.S. Title 47). WaFd relies on the one-year statute of limitations in § 47-4406(F) for claims brought by a customer against its bank based on unauthorized signatures or alterations to transactions. Section 47-4406(F) reads:

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer . . . discover and report *the customer's unauthorized signature on or any alteration on the item* is precluded from asserting against the bank the unauthorized signature or alteration.

A.R.S. § 47-4406(F) (emphasis added). However, Comment 5 specifically excludes any responsibility for an account holder to discover forged indorsements. A.R.S. § 47-4406 cmt. 5 ("Section 4-406 imposes no duties on the drawer to look for unauthorized indorsements."). The majority of the checks here were not indorsed and did not contain any alteration or unauthorized signature. Therefore, §47-4406(F)'s one-year statute of

limitations does not apply.

Rather, it is the three-year statute of limitations set out in § 47-4111 for all claims brought under Title 47 that governs. The first of the vendor checks was issued on October 1, 2020 (paid October 5, 2020) and the last was issued September 8, 2021 (paid September 9, 2021). (Doc. 1, Ex. A. at 4, 56.) Villas West filed suit on July 6, 2023. (Doc. 1.) Because Villas West commenced this action within three years of Sotelo depositing the vendor checks, the claim is timely and the Court will deny WaFd's Motion to Dismiss.

V.     **Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Defendant Wells Fargo's Motion to Dismiss is **DENIED**. (Doc. 6.)

**IT IS FURTHER ORDERED** that Defendant WaFd's Motion to Dismiss is **DENIED**. (Doc. 16.)

Dated this 18th day of April, 2024.

_____
Honorable Raner C. Collins
Senior United States District Judge